FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

AUG 1 0 2011

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JEFFREY SCOTT PERRY,                    )
                                        )
        Plaintiff                       )          CIVIL ACTION
                                        )          FILE NO.
Vs.                                     )
                                        )          JURY TRIAL DEMAND
                                        )
DONALD E. CRAIG, Individually and in    )
his official capacity as the Sheriff of )
Pickens County, MELVIN BRANDON          )    2:11-CV- 211
MERRITT, Individually and in his official )
capacity as a Deputy Sheriff of Pickens )
County,                                 )
                                        )
        Defendants                      )

## COMPLAINT FOR DAMAGES

Plaintiff JEFFREY SCOTT PERRY ("Plaintiff") files this his Complaint for

Damages as follows:

### Introduction

1.

This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983

and 1988, and the Fourth and Fourteenth Amendments to the United States

Constitution and under the law of the State of Georgia, against Pickens County

Sheriff  Donald E Craig, as well as Sergeant Melvin Brandon Merritt who is an

employee of the Pickens County Sheriff's Office.  Jurisdiction is based upon 28

U.S.C. §§ 1331 and 1343, and under the pendent jurisdiction of this Court to entertain claims arising under State law.

2.

It is alleged that Defendant Merritt used excessive force in effecting an unreasonable seizure of the person of Jeffrey Scott Perry, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution.  It is also alleged that Defendant Merritt illegally assaulted and battered Mr. Perry by intentionally striking and running over Mr. Perry with Defendant Merritt's patrol vehicle.  It is further alleged that Defendant Merritt was negligent in operating his patrol vehicle in such a way that it collided with and ran over Mr. Perry, causing severe burning, extreme pain and suffering, and other serious bodily injuries.

3.

It is further alleged that Defendant Craig, individually and in his official capacity as sheriff of Pickens County, based upon his creation of policies or customs encouraging the use of excessive force in apprehending fleeing suspects as evidenced by his reckless indifference towards or tacit approval of Defendant Merritt's violations of Mr. Perry's constitutional rights, failure to adopt policies regarding the appropriate operation of patrol vehicles and regarding the appropriate use of deadly force in apprehending fleeing suspects or, alternatively, to properly train or supervise Sheriff's Office personnel, proximately caused the illegal use of

excessive force and unreasonable detention. Finally, it is alleged that Defendant Craig is responsible for Defendant Merritt's negligent operation of his patrol vehicle under the doctrine of respondeat superior.

## **Personal Jurisdiction and Venue**

4.

Jeffrey Scott Perry is a natural person and citizen of the United States of America, residing in Pickens County, Georgia, and is of full age.

5.

Defendant Donald E. Craig ("Defendant Craig") is the duly elected Sheriff of Pickens County and, therefore, an officer of the County. Ga. Const. of 1983, Art. IX, Sec. I, Par. III. Sheriff Pickens can be personally served at the Pickens County Sheriff's Office, located at 2985 Camp Road, Jasper, GA 30143.

6.

Defendant Melvin Brandon Merritt ("Defendant Merritt"), who is employed as a Pickens County Sheriff's Deputy, may be personally served at his place of employment, 2985 Camp Road, Jasper, Pickens county, GA 30143.

7.

Defendants are subject to the personal jurisdiction of this Court.

8.

Subject matter jurisdiction is properly based upon 28 U.S.C. 1331 and 28 U.S.C. §1343 because Plaintiff is seeking relief under 42 U.S.C. §1983 for violations of his Fourth, and Fourteenth Amendment rights. The Court has supplemental jurisdiction over Plaintiff's state law claims, which arise from the same transactions and occurrences. See 28 U.S.C. §1367.

9.

Venue is proper pursuant to 28 U.S.C. §1391(b) because all Defendants reside in the State of Georgia and the Defendants reside in Pickens County, which is within the Gainesville Division of the Northern District of Georgia.

**Facts Common to All Counts**

10.

Plaintiff is a resident of Pickens County, Georgia.

11.

On August 11, 2009 Mr. Perry was a passenger in a Jeep Wrangler traveling north on Highway 515 in Pickens County.

12.

In the early morning hours of August 11, 209 Defendant Merritt began following the vehicle in which Mr. Perry was a passenger but did not immediately initiate his emergency equipment.

13.

At or about 3:58 a.m. Defendant Merritt and other officers for the Pickens County Sheriff's Office initiated a traffic stop on the vehicle in which Mr. Perry was a passenger.

14.

Less than 10 seconds after officers initiated a traffic stop on the vehicle in which Mr. Perry was a passenger the vehicle began to slow down and pull over to the side of the road. The vehicle in which Mr. Perry was a passenger had fully pulled over and stopped within 20 seconds of a traffic stop being initiated on the vehicle.

15.

At no time after officers initiated a traffic stop on the vehicle in which Mr. Perry was a passenger by activating their emergency equipment did the vehicle attempt to evade Defendant Merritt or other officers.

16.

Because the vehicle in which Mr. Perry was a passenger had no top Defendant Merritt was able to clearly see Mr. Perry in the front passenger seat of the vehicle, and was also able to see the driver of the vehicle and the second passenger located in the back seat of the vehicle.

17.

None of the people inside the vehicle in which Mr. Perry was a passenger made any threatening movements or movements that could have reasonable been interpreted as drawing a weapon prior to Mr. Perry exiting the vehicle.

18.

Defendant Merritt had no information that would have led him to believe Mr. Perry was armed prior to the time Defendant Merritt's patrol vehicle collided with Mr. Perry.

19.

Defendant Merritt and other officers initiated a traffic stop on the vehicle in which Mr. Perry was a passenger due to receiving information that the vehicle in which Mr. Perry was a passenger may have been stolen.

20.

Once the vehicle in which Mr. Perry was a passenger had pulled over to the side of the road Mr. Perry exited the vehicle and began to run towards the trees.

21.

According to the video of the event captured by Sergeant Michael Farmer's patrol vehicle as Mr. Perry ran away from the vehicle in which he had been a passenger he had his hands above his head.

22.

As was apparent from the patrol car video of the event Mr. Perry's hands were empty as he ran towards the trees.

23.

The area through which Mr. Perry travelled was overgrown with tall grass but Mr. Perry was easily visible at all times prior to his being run over by Defendant Merritt.

24.

The area through which Mr. Perry travelled at first sloped downwards for approximately twenty to thirty feet into a shallow ditch, then sloped upwards towards a tree line.

25.

As was visible on the patrol car video of the event as Mr. Perry exited the vehicle in which he was a passenger and travelled through the grassy area Defendant Merritt drove his patrol vehicle from the left most northbound lane, across the right most northbound lane, off the road and into the grassy area directly towards Mr. Perry.

26.

As was visible and audible on the patrol car video of the event Defendant Merritt pressed his accelerator, thereby causing his engine to audibly rev up, after beginning to travel down the grassy slope behind Mr. Perry and again pressed his

accelerator, thereby again causing his engine to audibly rev up, after beginning to travel up the hill on the other side of the shallow ditch behind Mr. Perry.

27.

As Mr. Perry ran up the hill on the side of the shallow ditch Defendant Merritt intentionally caused his patrol car to strike Mr. Perry.

28.

Mr. Perry was struck by the middle of the front bumper of Defendant Merritt's patrol vehicle and then run over by Defendant Merritt's patrol vehicle.

29.

Once Defendant Merritt brought his vehicle to a stop Mr. Perry was pinned underneath the vehicle in such a way that the exhaust pipe or other extremely hot portion of the undercarriage was on top of Mr. Perry's legs.

30.

After being run over by Defendant Merritt's vehicle Mr. Perry was in excruciating pain because his leg was suffering severe burns from the exhaust pipe or other extremely hot portion of the undercarriage of Defendant Merritt's vehicle.

31.

After being run over by Defendant Merritt's vehicle Mr. Perry repeatedly screamed that he was being burned and begged for the officers to help him.

32.

Despite Mr. Perry's screams Defendant Merritt and the other officers on scene did not immediately attempt to get Mr. Perry out from underneath the patrol vehicle, but rather began to tell Mr. Perry "this is what you get dumb-ass", "I'm sorry it's tough shit buddy", and otherwise make disparaging comments to Mr. Perry.

33.

Despite Mr. Perry's screams Defendant Merritt proceeded to question Mr. Perry about his conduct before taking any action to assist Mr. Perry.

34.

Mr. Perry was pinned underneath Defendant Merritt's patrol vehicle with his leg being burned for at least fifteen minutes before emergency workers arrived and removed Mr. Perry from underneath the patrol vehicle.

35.

Prior to being struck and run over by Defendant Merritt Mr. Perry offered no immediate threat of physical harm to any officer or bystander.

36.

Prior the using deadly force on Mr. Perry Defendant Merritt had no basis for reasonably believing Mr. Perry offered an immediate threat of physical harm to an officer or bystander.

37.

As is shown in the patrol car video Mr. Perry was unarmed and any person viewing Mr. Perry from the perspective of the Defendant Merritt would have been able to see that Mr. Perry's hands were empty.

38.

It was easily visible to Defendant Merritt that Mr. Perry was running away from Defendant Merritt and the other officers with his back towards the officers.

39.

No officers or bystanders were located in the direction that Mr. Perry was traveling prior to being struck.

40.

Defendant Merritt's striking and running over Mr. Perry with his patrol vehicle constituted a use of deadly force in detaining Mr. Perry.

41.

The use of deadly force was not necessary to effectuate the apprehension of Mr. Perry.

42.

Mr. Perry had only a short lead over any officers that would be following him on foot.

43.

No barriers prevented officers from following Mr. Perry on foot and apprehending him and Mr. Perry was plainly visible to the officers that could have followed him on foot.

44.

Prior to being struck and run over Mr. Perry had not committed a crime involving the infliction or threatened infliction of serious physical harm and his being at large posed no inherent danger to society.

45.

Prior to using deadly force on Mr. Perry Defendant Merritt had no basis for reasonably believing Mr. Perry's being at large posed an inherent danger to society.

46.

Prior to the use of deadly force on Mr. Perry Defendant Merritt had received no report that Mr. Perry had committed a crime involving the infliction or threatened infliction of serious physical harm and had no reason to believe that Mr. Perry had committed a crime involving the infliction or threatened infliction of serious physical harm.

47.

Prior to striking and running over Mr. Perry Defendant Merritt did not know the identity of Mr. Perry, and was unfamiliar with his criminal history.

48.

Mr. Perry has never been convicted of any crime involving the infliction or threatened infliction of serious physical harm.

49.

Further, even if there had been some apprehension by an officer that Mr. Perry was armed the actions of the Defendant Merritt was unreasonable and a violation of Mr. Perry's Constitutional rights and Georgia law in that Defendant Merritt failed to give any warning that the use of deadly force would be employed in detaining Mr. Perry prior to striking and running over Mr. Perry with a patrol car.

50.

No circumstances prevented the Defendant Merritt from giving a warning prior to the use of deadly force or rendered the giving of a warning prior to the use of deadly force infeasible.

51.

No officers or bystanders were located in the direction that Mr. Perry was traveling prior to being struck and run over and thus even if Mr. Perry had been armed he would have offered no immediate threat that would have justified the use of deadly force without prior warning.

52.

The use of deadly force against Mr. Perry infringed upon Mr. Perry's fundamental interest in his own life as well as his right to freedom, and also frustrated the interest of the individual, and of society, in judicial determination of guilt and punishment. Even taking into consideration the governmental interests in effective law enforcement there was no reasonable justification for the use of deadly force against Mr. Perry.

53.

At all times during the events described above, the defendants were acting under color of state law.

54.

At all times during the events describe d above, the defendants were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

55.

As a direct and proximate result of the said acts of Defendant Merritt and Defendant Craig, the plaintiff Jeffrey Scott Perry suffered the following injuries and damages.

    a. Violation of his constitutional rights under the Fourth and Fourteenth
       Amendments to the United States Constitution to freedom from

unreasonable seizure and freedom from the use of excessive,

unreasonable and unjustified force against his person.

b. Loss of his physical liberty;

c. Bodily injury, physical pain and suffering and emotional trauma and

suffering, requiring the expenditure of money for treatment in an amount

no less than $195,000.00;

d. Permanent physical injury.

## 56.

The actions of Defendant Merritt and Defendant Craig violated the

following clearly established and well settled federal constitutional rights of Mr.

Perry:

a. Freedom from the unreasonable seizure of his person;

b. Freedom from the use of excessive, unreasonable and unjustified force

against his person.

## 57.

At all time pertinent to this litigation Pickens County was insured by an

insurance group providing liability coverage for the actions of Defendant Merritt

and Defendant Craig.

## 58.

Pickens County procures automobile liability insurance pursuant to O.C.G.A. § 33-24-51 to cover liability for damages on account of bodily injury to any person arising by reason of ownership, maintenance, operation, or use of county owned motor vehicles including the motor vehicle driven by Defendant Merritt at the time it collided with Mr. Perry.

59.

Pickens County was provided timely anti-litem notice.

60.

By procuring automobile liability insurance, pursuant to O.C.G.A. § 33-24-51, Pickens County has waived its sovereign immunity and that of Defendant Craig up to the limit of said coverage for derivative liability for the negligent acts and omissions of Defendant Merritt and Defendant Craig which were the direct and proximate cause of the bodily injury to Jeffrey Perry.

61.

Jeffrey Perry is entitled to recover monetary damages in an amount to be proven at trial for himself for the bodily injury to Jeffrey Perry.

### COUNT I 42 U.S.C. 1983 Against Defendant Merritt

62.

Paragraphs 1 through 61 are incorporated herin by reference as though fully set forth.

63.

Plaintiff Jeffrey Scott Perry claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendant Merritt, individually and in his official capacity, for violations of his constitutional rights under color of law.

### COUNT II  Assault and Battery against Defendant Merritt

64.

Paragraphs 1 through 61 are incorporated herin by reference as though fully set forth.

65.

Defendant Merritt, individually and in his official capacity, assaulted and battered Jeffrey Scott Perry.

66.

Defendant Merritt acted with an actual intent to cause injury to Mr. Perry when he struck Mr. Perry with his patrol vehicle.

67.

As the result of this assault and battery, the plaintiff suffered the damages as aforesaid.

### COUNT III  42 U.S.C. § 1983 Against Defendant Craig

68.

Paragraphs 1 through 61 are incorporated herein by reference as though fully set forth.

69.

Prior to August 11, 2009, Defendant Craig developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of the persons of Pickens County, which caused the violation of Jeffrey Scott Perry' rights.

70.

It was the policy and/or custom of Defendant Craig to inadequately supervise and train its sheriff's deputies, including Defendant Merritt, thereby failing to adequately discourage further constitutional violations on the part of its sheriff's deputies.

71.

Defendant Craig did not require training dealing with the appropriate use of patrol vehicles in the detaining a person fleeing on foot.

72.

Defendant Craig did not require adequate training in the use of deadly force in the apprehension of fleeing suspects and in particular in the apprehension of unarmed suspects and in giving warnings prior to the use of deadly force against fleeing suspects.

73.

Defendant Craig did not require training in the safe use of patrol vehicles off of paved or unpaved roads and did not have a policy prohibiting the use of patrol vehicles off of paved or unpaved roads.

74.

Defendant Craig's failure to adequately train his subordinates, including Defendant Merritt, demonstrates a reckless or callous indifference to the rights of the citizens of Pickens County such as Mr. Perry.

75.

Defendant Craig created policies or customs encouraging his subordinates, including Defendant Merritt, to use excessive force in apprehending fleeing suspects.

76.

Defendant Craig was deliberately indifferent to or tacitly authorized Defendant Merritt's violation of Mr. Perry's constitutional rights, as is shown by the fact that no disciplinary action was undertaken against Defendant Merritt subsequent to striking and running over Mr. Perry. Further, no investigation was carried out by the Pickens County Sheriff's Office regarding Defendant Merritt's behavior in striking and running over Mr. Perry.

77.

The existence of a custom and/or policy encouraging the excessive use of force in apprehending fleeing suspects was further shown by the reaction of Sergeant Farmer, who was Defendant Merritt's supervisor at the scene of the incident, and other officers at the scene of the incident.  Immediately after the incident, when Defendant Merritt told Sgt. Farmer that he had run over Mr. Perry, Sgt. Farmer's response was, "Good".  Defendant Merritt, Sgt. Farmer and other officers at the scene then proceeded to make disparaging remarks towards Mr. Perry as he laid screaming in pain under the patrol car rather than making any effort to aid Mr. Perry.  Since the time of this incident Sgt. Farmer has been assigned by Defendant Craig to be the internal affairs officer responsible for investigating allegations of misconduct against employees of the Pickens County Sheriff's Office, further showing Defendant Craig's deliberate indifference toward or tacit authorization of Defendant Merritt's violation of Mr. Perry's Constitutional rights and the policy or custom encouraging the use of excessive force against fleeing suspects.

78.

As a result of the above described policies and customs, deputies of Pickens County, including Defendant Merritt, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

.

79.

Defendant Craig had actual or constructive knowledge that his subordinates, including Defendant Merritt, were engaged in behaviors that posed a pervasive and unjustified risk of constitutional injury to citizens such as Mr. Perry.

80.

Defendant Craig had actual or constructive knowledge that his failure to train his subordinates as alleged above and his policies and customs accepting and encouraging the excessive use of force against fleeing suspects would pose a pervasive and unjustified risk of constitutional injury to citizens such as Mr. Perry.

81.

The above described policies and customs demonstrate a reckless disregard or deliberate indifference on the part of Defendant Craig to the constitutional rights of persons within the County, and were the cause of the violations of plaintiff's rights alleged herein.

## Count IV **Negligence against Defendants Merritt and Craig**

82.

Paragraphs 1through 61 are incorporated herein by reference as though fully set forth.

83.

Defendant Merritt was making use of a flashing blue light but was not using an audible signal while driving his patrol vehicle prior to striking Mr. Perry.

84.

Defendant Merritt was negligent in the operation of his patrol car as a matter of fact and as a matter of law:

(a) In traveling too fast for conditions;

(b) In failing to maintain a single lane;

(c) In driving off of a roadway;

(d) In driving through an area heavily covered in tall grass;

(e) In failing to keep a proper lookout for pedestrians;

(f) In failing to yield;

(g) In failing to avoid colliding with a pedestrian;

(h) In failing to take evasive action;

(i) In failing to drive with due regard for the safety of Jeffrey Perry;

(j) In using excessive force in effecting the apprehension of Jeffrey Perry;

(k) In using deadly force in effecting the apprehension of Jeffrey Perry.

85.

Defendant Merritt's negligence was the proximate cause of the bodily injury to Jeffrey Perry.

86.

Defendant Merritt's negligence is imputed to Defendant Craig pursuant to the doctrine of respondeat superior.

## Prayer For Relief

WHEREFORE, Plaintiff Jeffrey Scott Perry prays that this Court issue the following relief:

1) That process issue in accordance with the law;

2) That the Court award Plaintiff compensatory and general damages in an amount to be determined by the jury against the Defendants, jointly and severally;

3) That the Court award Plaintiff Jeffrey Perry punitive damages in an amount to be determined by the enlightened conscience of the jury against the Defendants;

4) That the Court award costs of this action, including attorneys' fees, to plaintiff, pursuant to U.S.C. §1988 and other applicable laws regarding such awards;

5) That the Court award Plaintiff such other and further relief as it deems

  just and necessary; and

6) That Plaintiff be granted a trial by jury.


KIMMEY, MURPHY & HORSLEY, P.C.

BY:  _____
     Nathanael A. Horsley
     Attorney for Plaintiff
     Georgia Bar No. 367832
     135 Prominence Court
     Suite 130
     Dawsonville, GA 30534
     Phone:      706-216-7228
     Fax:        706-216-1610